UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

PABLO ROSENDO, LEONIDES RESCALVO, :
ROGELIO ROSENDO and CATARINO
VENANCIO, individually and on behalf of          :
others similarly situated,

                                          :

                    Plaintiffs,          :

                                 :

        - against -          :

EVERBRIGHTEN INC. (d/b/a WASABI
LOBBY), TONG LIN, CHANG QING CHEN,  :
and JACKY CHEN,

                                 :

                  Defendants.
-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/7/15

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
JOHN G. KOELTL**

13cv7256-JGK-FM

**FRANK MAAS**, United States Magistrate Judge.

       Plaintiffs Pablo Rosendo ("Pablo"), Leonides Rescalvo ("Rescalvo"),

Rogelio Rosendo ("Rogelio"), and Catarino Venancio ("Venancio") (collectively,

"Plaintiffs") commenced this action against defendants Everbrighten Inc., d/b/a "Wasabi

Lobby," Tong Lin, Chang Qing Chen, and Jacky Chen (collectively, "Defendants") under

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York

Labor Law ("NYLL"), N.Y. Lab. Law § 190, et seq.  (ECF No. 1 ("Complaint" or

"Compl.")).  On March 7, 2014, Your Honor granted the Plaintiffs' motion for a default

judgment and referred the case to me to conduct an inquest.  (ECF Nos. 19, 20).  For the

reasons set forth below, I now recommend that the Plaintiffs be awarded judgment against

the Defendants in the amount of $691,469.08, plus prejudgment interest on the Plaintiffs'

NYLL "spread of hours" claims at the rate of nine percent per annum.

I.      <u>Procedural History</u>

      The Plaintiffs filed this action on October 15, 2013, and effected service on October 24, 2013 (ECF Nos. 1, 4-7), but the Defendants failed to answer or appear (ECF Nos. 11-14).  Thereafter, on February 13, 2014, Your Honor issued an order directing the Defendants to show cause why the Court should not enter a default judgment.  (ECF No. 18).  Pursuant to that order, the Defendants were to file any responsive papers by March 3, and to appear before Your Honor on March 7, 2014 (<u>id.</u>), but they failed to comply with either directive.  As a result, on March 7, 2014, Your Honor granted the Plaintiffs' motion for a default judgment and referred the case to me to conduct an inquest.  (ECF Nos. 19, 20).

      By order dated March 18, 2014, I directed that the Plaintiffs serve and file their inquest papers by April 28, 2014, and that the Defendants serve and file any opposition papers by May 12, 2014.  (ECF No. 25).  My order cautioned that, "[i]f no request for a hearing is made by any party, I shall make my report and recommendation on the basis of the papers submitted to me without any oral argument."  (<u>Id.</u>).  Although the Plaintiffs timely filed their inquest papers (ECF Nos. 23-28), the Defendants have not responded or had any other communication with the Court.

II.     <u>Standard of Review</u>

      In light of the Defendants' default, the Court must accept as true the Plaintiffs' well-pleaded allegations concerning issues other than damages.  <u>See</u> <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty</u>

Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F.

Supp. 2d 543, 547 (S.D.N.Y. 1998).  Accordingly, the only question before the Court is

the quantum of damages that the Plaintiffs are entitled to recover.

   Although a plaintiff seeking to recover damages against a defaulting

defendant must actually prove his or her damages by submitting admissible evidence, the

Court need not hold a hearing so long as (a) the Court has determined the proper rule for

calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151,

155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty,

the basis for the damages specified in the default judgment, see Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Both

requirements have been satisfied in this case.  Moreover, neither party has requested a

hearing.  I therefore have prepared this Report and Recommendation based on the

Plaintiffs' written submissions.

III. Relevant Facts

   The Plaintiffs' Complaint and inquest papers establish as follows:

   The Defendants owned and operated a restaurant known as Wasabi Lobby

on the Upper East Side of Manhattan.  (Compl. ¶¶ 2, 33).  The Plaintiffs all held non-

managerial positions at that restaurant between October 2010 and September 2013.

Throughout the Plaintiffs' employment, the Defendants were authorized to hire and fire

employees, controlled the employees' terms and conditions of employment, and

determined their rate and method of compensation.  (Id. ¶¶ 26, 29, 32).

3

The Defendants hired Pablo as a cook and dishwasher at Wasabi Lobby on or about March 10, 2012, and he continued to work there until approximately September 16, 2013.  (Id. ¶¶ 45-46).[1]  From the beginning of his employment until approximately January 2013, Pablo worked eleven hours a day for two days each week, eleven and one-half hours a day for three days each week, and twelve hours a day once a week, for a total of sixty-eight and one-half hours of work per week.  (Id. ¶¶ 50, 59).  During this time period, he was paid $1,200 every two weeks, i.e., $600 dollars per week.  (Id. ¶ 54).  From approximately February until May 2013, Pablo took on an additional eleven hour shift each week, bringing his total work hours to approximately seventy-nine and one-half hours per week.  (Id. ¶¶ 51, 59).  During this period, he was paid at a rate of $650 per week.  From approximately June 2013, until the end of his employment in September 2013, Pablo returned to his original sixty-eight and one-half hour per week schedule, and again was paid at a rate of $600 per week.  (Id. ¶¶ 51, 56, 59).

Rescalvo worked as a delivery worker at Wasabi Lobby from approximately October 2010 until September 16, 2013.  (Id. ¶ 66).[2]  Despite his job title, Rescalvo frequently was required to perform non-delivery work, such as cleaning, preparing food, and restocking food supplies.  (Id. ¶¶ 4, 67).  Throughout his

---

[1]     Each of the Plaintiffs has submitted a declaration corroborating the allegations of the Complaint that pertain to them.  (See ECF Nos. 25-28).  Where the facts are undisputed, I have not provided parallel citations to those declarations.

[2]     The complaint incorrectly states that Rescalvo's starting date was October 2011.  (See ECF No. 26 ¶ 6).

employment, Rescalvo worked ten-hour shifts each Monday through Saturday, and a five-hour shift on Sunday, for a total of approximately sixty-five hours per week.  (Id. ¶¶ 72, 76).  Rescalvo received a fixed $380 salary every two weeks, i.e., $190 per week.  (Id. ¶ 74).  Although the Defendants apparently considered Rescalvo a tipped employee for whom they could claim a tip credit, Rescalvo never received the required notification that his tips would be used to offset his wages.  (See id. ¶¶ 78-79).

Rogelio worked as a cook at Wasabi Lobby from approximately September 2011 until November 2012.  (Id. ¶¶ 85, 86).  Throughout his employment at Wasabi Lobby, Rogelio worked six twelve-hour shifts each week, for a total of seventy-two hours per week.  (Id. ¶¶ 90, 91, 96).  He received a fixed $1100 salary every two weeks, i.e., $550 per week.  (Id. ¶ 93).

Venancio worked as a cook at Wasabi Lobby from approximately October 2011 until September 17, 2013.  (Id. ¶¶ 103-04).  From the beginning of his employment until about January 2013, Venancio worked approximately sixty-eight and one-half hours per week, and was paid at a rate of $550 per week.  (Id. ¶¶ 108, 109, 113, 118).  Between February and May 2013, Venancio worked an additional eleven-hour shift each week, bringing his total work hours to approximately seventy-nine and one-half hours per week.  (Id. ¶¶ 110, 118).  During this time period, Venancio was paid at a rate of $600 per week.  (Id. ¶¶ 114).  In approximately June 2013, Venancio returned to working sixty-eight and one-half hours per week at a fixed rate of $550 per week.  He continued to work those

hours at that pay rate until September 17, 2013, when his employment ended.  (<u>Id.</u> ¶¶ 111, 115, 118).

Although the Plaintiffs each worked substantially more than forty hours per week throughout their employment, the Defendants never paid them the overtime wages required by the FLSA and the NYLL.  The Defendants also failed to pay the Plaintiffs the "spread of hours" premium that the NYLL requires for employees who work more than ten hours per day.  (<u>Id.</u> ¶¶ 5-6).  Finally, the Defendants wrongfully avoided paying Rescalvo the minimum wage required by the FLSA and the NYLL by disguising his job duties and paying him at a lower tip-credited rate.  (<u>Id.</u> ¶ 10).  The Defendants engaged in these violations of the FLSA and the NYLL both knowingly and willfully.  (<u>Id.</u> ¶¶ 132, 154, 158, 164, 169, 173, 178).

IV.    <u>Discussion</u>

As a result of the Defendants' default, the Plaintiffs claim to be entitled to actual damages, as well as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs.

A.    <u>Actual Damages Under the FLSA and the NYLL</u>

The Plaintiffs contend that the Defendants are jointly and severally liable for damages under the FLSA and the NYLL because they willfully failed to pay each of the Plaintiffs overtime and "spread of hours" wages as required by law.  In addition, the Plaintiffs allege that the Defendants failed to pay Rescalvo the legally-required minimum wage.  (<u>See</u> Compl. ¶¶ 148-74; ECF No. 23 (Pls.' Inquest Mem. of Law) ("Pls.' Mem.")).

6

The Plaintiffs seek to recover these unpaid wages for the entire period during which they were employed.[3]

      1.    <u>Unpaid Minimum Wages</u>

Both the FLSA and the NYLL require employers to pay their employees at or above the minimum wage rate for every hour worked.  29 U.S.C. § 206; N.Y. Lab. Law § 652.  "Where an employer fails to maintain adequate records of his employees' compensable time as required by the FLSA, a plaintiff employee must produce only 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  <u>Cuzco v. Orion Builders, Inc.</u>, 262 F.R.D. 325, 331 (S.D.N.Y. 2009) (quoting <u>Reich v. S. New England Telecomms. Corp.</u>, 121 F.3d 58, 67 (2d. Cir. 1997)).  In a default situation, when the defendants have failed to rebut the plaintiffs' allegations, "[the] plaintiffs' recollection and estimates of hours worked are presumed to be correct."  <u>Liu v. Jen Chu Fashion Corp.</u>, No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

Throughout the time the Plaintiffs worked for the Defendants, the federal minimum wage and the New York state minimum wage were both $7.25 per hour.  29 U.S.C. § 206; 12 N.Y. Comp. Codes R. & Regs. § 142-2.1.  The corresponding

---

[3]    The statute of limitations under the NYLL is six years.  N.Y. Lab. Law §§ 198(3), 663(3).  Under the FLSA, the statute of limitations is two years, but may be extended to three years if the claim arises from a "willful" violation.  29 U.S.C. § 255(a).  Because the Defendants defaulted, the Court must assume the Plaintiffs' claims arose from willful violations, and the FLSA three-year statute of limitations applies.  Since each of the Plaintiffs began working for the Defendants less than three years before the complaint was filed, all of their claims fall within both statutes of limitation.

mandatory minimum overtime rate thus was $10.88 per hour.  See 29 U.S.C. § 207(a)(1);

12 N.Y. Comp. Codes R. & Regs. § 142-2.2.

To determine whether and to what extent an employee is owed backpay for

unpaid minimum wages, the Court first must ascertain the employee's regular hourly rate.

When an employee's pay does not vary based on the number of hours he works each

week, "[t]here is a rebuttable presumption that [his] weekly salary covers 40 hours."

Moon v. Kwon, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002) (quoting Giles v. City of New

York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)).  Thus, when an employer has defaulted

and offers no rebuttal, the Court calculates the employee's regular hourly rate by dividing

his weekly salary by forty hours.  If the employee's regular hourly rate falls below the

minimum wage, he is entitled to recover in backpay the difference between what he

actually was paid and what he should have been paid for his first forty hours of work each

week under the prevailing minimum wage.

The Plaintiffs concede that Pablo, Rogelio, and Venancio all received

salaries above the minimum wage throughout their employment.  (See ECF No. 24 (Decl.

of Joshua S. Androphy, dated Apr. 28, 2014 ("Androphy Decl.")), Ex. A (Damages

Calculation Chart ("Calc. Chart"))).  Rescalvo's salary, however, fell below the minimum

wage.  At all times during his employment, Rescalvo was paid $190 per week.

Presuming, as the Court must, that this salary was intended to cover a forty-hour work

week, Rescalvo's regular hourly rate was $4.75 per hour,[4] which is $2.50 below the minimum wage.  Multiplied by the first forty hours Rescalvo worked each week, that underpayment translates into $100 of unpaid minimum wages for each week that Rescalvo worked at Wasabi Lobby.  Rescalvo is therefore entitled to recover $15,200 in unpaid minimum wages for the 152 weeks that he worked for the Defendants.[5]

### 2.   Unpaid Overtime Wages

The FLSA and the NYLL both further require employers to compensate their employees at one and one-half times their regular hourly rate for every hour worked over forty hours per week.  See 29 U.S.C. § 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 ("An employer shall pay an employee for overtime . . . in the manner and methods provided in and subject to the exemptions of [the FLSA].").  On the assumption that an employee's weekly salary is intended to cover only forty hours per week, any time worked in excess of forty hours represents uncompensated overtime for which the employee is owed backpay.

---

[4]     The Plaintiffs' Damages Calculation Chart describes Rescalvo's "calculated regular rate of pay" as $2.92 per hour, which is the result obtained if one divides his $190 weekly salary by the sixty-five hours that he worked each week, rather than the first forty hours that his salary is presumed to cover.  (See Calc. Chart at 1).  I have instead calculated Rescalvo's "regular" rate of pay by dividing his weekly salary by the forty hours that it presumptively was intended to cover.

[5]     It is possible that the Defendants paid Rescalvo below the minimum wage because they applied some portion of his weekly delivery tips against the amount that they owed him under the minimum wage laws.  If that was their intent, the Defendants were obligated to notify Rescalvo of the statutory requirements related to the tip credit.  Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2012).  Having defaulted, the Defendants have presented no evidence that they satisfied the notice requirements of the FLSA and the NYLL.  They consequently are liable for the full minimum wage without any offset.  Id.

An employee's appropriate overtime rate is calculated by multiplying his regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half.  That rate then is multiplied by the number of hours in excess of forty hours the employee worked each week.  The resulting total represents the amount of overtime wages that the employee is entitled to recover.

Here, the Plaintiffs worked substantially more than forty hours per week, and therefore may recover the difference between the hourly wages they received and the wages they should have received at their appropriate overtime rate.  Inasmuch as Rescalvo's regular hourly rate fell below the minimum wage, he is entitled to overtime damages equal to one and one-half times the minimum wage, less any wages he actually received for his overtime hours.  Since Rescalvo received no overtime pay, he is entitled to $271.88 per week in unpaid overtime wages (25 hours x $7.25 x 1.5), or a total of $41,325 for the 152 weeks that he worked at Wasabi Lobby.  Pablo, Rogelio, and Venancio's regular hourly rates exceeded the minimum wage.  They thus are entitled to recover overtime damages equal to one and one-half times their regular hourly rates, less the hourly wages they received for their overtime hours.  Here again, there were no overtime wages paid.  Accordingly, the Plaintiffs are entitled to recover $56,125.31 for Pablo ((28.5 hours x $15 x 1.5 x 62 weeks) + (39.5 hours x $16.25 x 1.5 x 17 weeks)), $41,580 for Rogelio (32 hours x $13.75 x 1.5 x 63 weeks), and $65,072.81 for Venancio ((28.5 hours x $13.75 x 1.5 x 85 weeks) + (39.5 hours x $15 x 1.5 x 17 weeks)).

10

3.     Spread of Hours

Under the NYLL, an employer must pay an employee who works more than ten hours in one day an additional hour of pay at the minimum wage rate.  12 N.Y. Comp. Code R. & Regs. § 142-2.4.

The Plaintiffs all claim that they regularly worked more than ten hours per day.  Pablo alleges that he worked five ten-plus hour shifts per week for the first forty-seven weeks of his employment, and six ten-plus hour shifts per week for the remaining thirty-two weeks of his employment.   Pablo therefore is owed $3,095.75 ((5 x 47) + (6 x 32) x $7.25) in "spread of hours" pay.  Rescalvo says that he worked six ten-plus hour shifts each week for a total of 152 weeks, thereby entitling him to recover $6,612 (6 x 152 x $7.25) in "spread of hours" pay.  Rogelio states that he worked six ten-plus hour shifts each week, for sixty-three weeks.  Plaintiffs thus correctly calculate his spread of hours damages as $2,740 (6 x 63 x $7.25).  Finally, Venancio alleges that he worked six ten-plus hour shifts each week for 102 weeks, bringing his "spread of hours" damages to $4,437 (6 x 102 x $7.25).

B.     Liquidated Damages

Both the FLSA and the NYLL allow plaintiffs to recover liquidated damages.  The FLSA requires courts to award liquidated damages in an amount equal to compensatory damages unless the employer demonstrates that it acted in "good faith."  29 U.S.C. §§ 216(b), 260.  Prior to April 9, 2011, the NYLL provided for an award of liquidated damages equal to twenty-five percent of the unpaid wages if a violation was

"willful."  N.Y. Lab. Law § 663(1) (2010).  Effective April 9, 2011, the NYLL was amended to provide for liquidated damages "equal to one hundred percent of the total . . . underpayments found to be due," "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 663(1) (2011).  Unlike the FLSA, the NYLL incorporates the "spread of hours" premium into the wage base upon which liquidated damages are calculated.  Compare 29 U.S.C. § 216(b) (offending employers "shall be liable . . . in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages"), with N.Y. Lab. Law § 663(1) (2011) (offending employers shall be liable for "liquidated damages equal to . . . the total of such underpayments found to be due").

By virtue of their default, the Defendants have admitted that they acted willfully and in bad faith, thus entitling the Plaintiffs to liquidated damages under both statutes.  District courts have disagreed, however, as to whether plaintiffs may simultaneously recover liquidated damages under both the FLSA and the NYLL.  A majority of the judges in this Circuit have taken the view that such a simultaneous recovery is permissible because liquidated damages under the FLSA and the NYLL serve different purposes.  As those judges have stated, while liquidated damages under the FLSA are considered compensatory, essentially serving as a form of prejudgment interest, liquidated damages under the NYLL are punitive.  See, e.g., Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008) ("[A] prevailing plaintiff who can justify

12

both [FLSA] liquidated damages and state-law [liquidated] damages should be eligible to recover both, since they . . . serve fundamentally different purposes.") (internal quotation marks omitted); accord Lanzetta v. Florio's Enters., Inc., No. 08 Civ. 6181 (DC), 2011 WL 3209521, at *5 (S.D.N.Y. July 27, 2011); Callier v. Superior Bldg. Servs., Inc., No. 09-CV-4590 (ILG) (JMA), 2010 WL 5625906, at *4 (E.D.N.Y. Dec. 22, 2010); Jin M. Cao v. Wu Liang Ye Lexington Rest., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *5-6 (S.D.N.Y. Sept. 30, 2010).

Other judges have reached the opposite conclusion, holding that "a plaintiff is not entitled to both federal and state liquidated damages because they serve the same practical purposes in compensating the plaintiff and deterring wage violations."  See, e.g., Li Ping Fu v. Pop Art Int'l Inc., No. 10 Civ. 8562 (DLC) (AJP), 2011 WL 4552436, at *5 (S.D.N.Y. Sept. 19, 2011) (Report & Rec.), adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011);  Chun Jie Yin v. Kim, No. 07-CV-1236 (DLI) (JO), 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008) ("[T]o the extent the 'liquidated damages' available under the FLSA can properly be characterized as compensation, it is apparent that the 'liquidated damages' available under the state statute compensates the exact same harm – namely, the harm caused by the defendant's culpable state of mind."); see also Jin v. Pac. Buffet House, Inc., No. 06-CV-579 (VVP), 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009) ("Regardless of the purpose, the award under the FLSA is four times the award under state law, and thus is more than sufficient to satisfy any punitive purpose the state law is intended to serve.").

Although there are similarities in the "practical purposes" of both statutes, Li Ping Fu, 2011 WL 4552436, at *5, the Second Circuit impliedly has recognized that each liquidated damages provision serves a different goal.  See Reich, 121 F.3d at 70-71 ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature.").  Consistent with that view, the Plaintiffs should be permitted to recover liquidated damages under both the FLSA and the NYLL.  Indeed, by failing to appear in this lawsuit, the Defendants have waived any claim to the contrary.

After subtracting the spread of hours premium from the FLSA liquidated damages calculation, the Plaintiffs are entitled to recover the following amounts as liquidated damages:[6]

---

[6]     The liquidated damages calculations set forth in the Plaintiffs' Damages Calculation Chart fail to take into account that prior to April 9, 2011, the NYLL limited a plaintiff's liquidated damages recovery to twenty-five percent of his unpaid wages.  The amended NYLL, which permits plaintiffs to recover one hundred percent of their unpaid wages in liquidated damages, should not be applied retroactively – in part because the statute is silent with respect to the issue of retroactivity.  See Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *9 n.19 (S.D.N.Y. May 14, 2012) (collecting cases).  Consequently, because Rescalvo's employment began twenty-five weeks before the NYLL was amended, his liquidated damages for that time period must be limited to twenty-five percent of the amount he is owed in unpaid wages.

| LIQUIDATED DAMAGES | | | | |
|---|---|---|---|---|
| CLAIMANT | FLSA | NYLL | | TOTAL |
| | | Pre-April 9, 2011 | After April 9, 2011 | |
| Pablo | $56,125.31 | n/a | $59,221.06 | $115,346.37 |
| Rescalvo | $56,525.00 | $2,596.09 | $47,228.13 | $106,349.22 |
| Rogelio | $41,580.00 | n/a | $44,320.00 | $85,900.00 |
| Venancio | $65,072.81 | n/a | $69,509.81 | $134,582.62 |

C.   Prejudgment Interest

The Plaintiffs also are entitled to prejudgment interest on their state law damages at the rate of nine percent per annum.  N.Y. C.P.L.R. § 5001.  The FLSA, however, does not provide for prejudgment interest.  Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715 (1945)).  This is because "liquidated damages awarded under the FLSA for unpaid overtime [already are] designed to compensate employees for delay in payment, [and] such damages [therefore] are the functional equivalent of prejudgment interest on the overtime pay."  Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).  Moreover, when a plaintiff has received an award of federal liquidated damages, he is "entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed."  Id.; see, e.g., McLean v. Garage Mgmt. Corp., Nos, 10 Civ. 3950 (DLC), 09 Civ. 9325 (DLC), 2012 WL 1358739, at *11 (S.D.N.Y. Apr. 19, 2012) (plaintiffs "entitled to NYLL prejudgment interest . . . on unpaid overtime wages for the period during which they will not receive

FLSA liquidated damages").  Accordingly, the Plaintiffs can recover prejudgment interest only on those claims for which no federal liquidated damages have been awarded.  In this case, those claims are limited to the Plaintiffs' claims for spread of hours compensation under the NYLL.

"When unpaid wages were incurred at various times, simple prejudgment interest is calculated from a singular, midpoint date through the date judgment is entered."  Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quotations, brackets, and ellipses omitted); see also Gonway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir. 1994) ("[W]here damages are incurred at various times after the cause of action accrues, [New York law] grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest.").  Courts most commonly use the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed."  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012).

The approximate midpoint dates for each Plaintiff's employment at Wasabi Lobby are as follows:  Pablo, December 13, 2012; Rescalvo, April 1, 2012; Rogelio, April 9, 2012; and Venancio, September 24, 2012.  Each of the Plaintiffs therefore should recover prejudgment interest on their spread of hours damages from those dates forward at a rate of nine percent per annum.

D.     Attorneys' Fees and Costs

Finally, the Plaintiffs seek reimbursement for attorneys' fees and costs in the amount of $18,430.  (Compl. at 28; Pls.' Mem. at 18).  "Both the FLSA and NYLL

are fee-shifting statutes entitling [Plaintiffs] to recover . . . reasonable attorneys' fees and costs." Gurung, 851 F. Supp. 2d at 595; see 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).[7]

1.   Attorneys' Fees

To determine the amount of attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," often referred to as the "lodestar." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183, 189-90 (2d Cir. 2008). That amount is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id.; see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010). Courts calculate the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

---

[7]     Effective April 9, 2011, section 663(4) of the NYLL provides that:

In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorneys' fees and costs incurred in enforcing any court judgment. Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

Therefore, unless the Defendants either honor the Court's award of attorneys' fees and costs or file an appeal within ninety days, the portion of the judgment attributable to the Plaintiffs' NYLL claims will automatically increase by fifteen percent.

a.   <u>Reasonable Hourly Rate</u>

In assessing the reasonableness of an attorney's hourly rate, the Court must consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." <u>I.B. v. N.Y.C. Dep't of Educ.</u>, 336 F.3d 79, 80 (2d Cir. 2003) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).  In doing so, the Court may rely on its own knowledge of private firm hourly rates.  <u>Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund</u>, 831 F.2d 407, 409 (2d Cir. 1987).  The "relevant community" is "normally the forum district."  <u>Arbor Hill</u>, 369 F.3d at 96.

"[T]he FLSA and New York Labor Law are both straightforward statutes." <u>Castellanos v. Deli Casagrande Corp.</u>, No. CV 11-245 (JFB) (AKT), 2013 WL 1207058, at *10 (E.D.N.Y. Mar. 7, 2013) (internal quotation omitted).  Thus, attorneys in FLSA cases typically command hourly rates relatively modest rates of between $250 and $450 per hour, depending on their level of experience.  <u>Gurung</u>, 851 F. Supp. 2d at 597.

The Plaintiffs in this action are represented by Michael Faillace, Joshua Androphy, and Lina Franco, of Michael Faillace & Associates, P.C., an employment law firm located in Manhattan.  Mr. Faillace, the managing member of the firm, has been admitted to practice law since 1983.  Before starting his own firm, Mr. Faillace served as in-house Employment Counsel for IBM.  He has taught employment law at both Fordham University School of Law and Seton Hall University Law School, and has authored a number of publications concerning employment law.  The Plaintiffs seek to recover for

18

Mr. Faillace's time at the rate of $450 per hour, which is alleged to be his "regular billing rate." (Androphy Decl. ¶ 13(i)). Mr. Androphy is a senior attorney at the firm, and has been admitted to the practice of law since 2005. He notes that Super Lawyers named him a "New York Metro Rising Star" in 2014. The Plaintiffs seek to recover for Mr. Androphy time at the rate of $400 per hour. (Id. ¶ 13(ii)). Ms. Franco is an associate at the firm, and has worked as a litigator since 2012. The Plaintiffs seek to recover for her time at the rate of $350 per hour, which is alleged to be her regular billing rate. (Id. ¶ 13(iii)).

Most FLSA cases are settled with plaintiffs' counsel recovering a contingency fee. To speak of "regular" billing rates for plaintiffs' counsel in such cases is therefore something of a misnomer. Indeed, in recent cases in which courts have been asked to determine a reasonable hourly rate for attorneys at Michael Faillace & Associates, the rates allowed have been below their requested "regular" hourly rates. See Marquez v. Erenler, Inc., No. 12-cv-8580-GHW, 2014 WL 5847441, at *2-3 (S.D.N.Y. Nov. 10, 2014) (awarding Mr. Faillace $400 per hour, Mr. Androphy $300 per hour, and Ms. Franco $200 per hour); Galeana v. Lemongrass on Broadway Corp., No. 10 Civ. 7270 (GBD) (MHD), 2014 WL 1364493, at *14 (S.D.N.Y. Apr. 4, 2014) (awarding Mr. Faillace $425 per hour and an associate "focusing on FLSA claims since 2006" $250 per hour); Yuquilema v. Manhattan's Hero Corp., No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *14-15 (S.D.N.Y. Aug. 26, 2014) (adopting the Galeana $425 hourly rate for Mr. Faillace and awarding $300 per hour for Mr. Androphy); Cisneros v. Schnipper Rest.,

19

LLC, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *2 (S.D.N.Y. Jan. 8, 2014) (reducing r

rates similar to those requested for Mr. Faillace and Ms. Franco in this case by imposing a

twenty-five percent across-the-board reduction); Ramirez v. H.J.S. Car Wash, Inc., No.

CV-11-2664 (VVP), 2013 WL 3148658, at *2 (E.D.N.Y. June 19, 2013) (awarding Mr.

Faillace $300 per hour).

      In light of these and similar awards, the Court finds that the reasonable

hourly rates for the timekeepers for whom recovery is sought are as follows:  Mr.

Faillace, $400; Mr. Androphy, $300; Ms. Franco, $225.

                  b.       Hours Reasonably Expended

      To enable a court to determine the reasonableness of the hours expended, a

party seeking an award of attorneys' fees must submit contemporaneous time records

indicating the number of hours expended and the nature of the work done.  See Lewis v.

Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); N.Y. State Ass'n for Retarded Children, Inc.

v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); Puglisi v. Underhill Park Taxpayer Ass'n,

964 F. Supp. 811, 817 (S.D.N.Y. 1997).

      The contemporaneous time records submitted by Plaintiffs' counsel indicate

that their work on this case consumed 42 hours of billable time.  (Androphy Decl. Ex. B).

Having reviewed the time records, I find that the number of hours expended on certain

aspects of this case were excessive.  For example, counsel spent 9.75 hours drafting,

revising, and filing the complaint, and 13.2 hours preparing and filing their motion for a

default judgment and their largely duplicative inquest papers.  These documents,

however, appear to contain mostly boilerplate language that Plaintiffs' counsel has used in previous cases.  Recognizing the repetitiveness of the tasks arising in these cases, several judges in this District have adjusted the hours claimed by Plaintiffs' counsel.  See, e.g., Yuquilema, 2014 WL 4207106, at *14 (rejecting hours allegedly spent reviewing and finalizing largely boilerplate complaint); Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *13 (S.D.N.Y. Aug. 2, 2012) (reducing 40.5 hours spent by fifteen percent because case involving default judgment did not raise particularly complex legal issues and submissions largely included  boilerplate language); Carrasco v. West Village Ritz Corp., No. 11 Civ. 7843 (DLC) (AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012) (not crediting counsel for 15.05 hours of work on default motion because "the motion papers appear to be largely 'boiler plate' used by plaintiffs' counsel in other cases").  Here, to account for the straightforward nature of the case and the availability of boilerplate text, it is appropriate to reduce Plaintiffs' counsel's billed time by fifteen percent.  See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (an "across-the-board percentage cut[ ] in hours [is] a practical means of trimming fat from a fee application") (citations and internal quotation marks omitted).

 After making the hourly rate and time adjustments described above, the Plaintiffs should be awarded $12,403 as their reasonable attorneys' fees in this matter.

  2. Costs

 In addition to attorneys' fees, the Plaintiffs seek to recover costs in the amount of $700, which includes the $400 fee for filing this lawsuit and four $75 process

server fees.  (Androphy Decl. Ex. B at 2).  The costs that a party is entitled to recover are set forth in 28 U.S.C. § 1920, Rule 54(d)(1) of the Federal Rules of Civil Procedure, and Local Civil Rule 54.1.  Pursuant to those provisions, court filing fees plainly may be taxed as costs.  Although process server fees are not identified as taxable costs under any of these provisions, the Second Circuit has expressly approved their recovery in connection with an award of attorneys' fees.  See U.S. ex rel. Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 172 (2d Cir. 1996).  The Plaintiffs therefore are entitled to recover costs in the full amount of $700.

V.    Conclusion

In sum, I recommend that Pablo be awarded $174,567.43, plus prejudgment interest on the sum of $3,095.75 at the rate of nine percent per annum from December 13, 2012; Rescalvo, $169,486.22, plus prejudgment interest on the sum of $6,612 at the rate of nine percent per annum from April 1, 2012; Rogelio, $130,220, plus prejudgment interest on the sum of $2,740 at the rate of nine percent per annum from April 9, 2012; and Venancio, $204,092.43, plus prejudgment interest on the sum of $4,437 at the rate of nine percent per annum from September 24, 2012.  In addition, the Plaintiffs should recover $12,403 in attorneys' fees and $700 in costs.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable John G. Koeltl, United States District Judge, and to the

chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New

York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b) (1); Fed. R.

Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must

be directed to Judge Koeltl.  Failure to file these timely objections will result in a waiver

of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Dated:      New York, New York
            April 7, 2015

                                            _____
                                                    FRANK MAAS
                                            United States Magistrate Judge



Copies to Plaintiffs' counsel via ECF